The next case on the calendar is Sigmond v. Goldman Sachs. Good day, Your Honors. I am David Meshon. I am counsel to the trustee in bankruptcy, Wayne Sigmond, the plaintiff in an action that has boiled down to just one claim for relief, that of fraudulent transfer, constructive fraudulent transfer. And we're here on de novo because summary judgment was granted to the defendants. Let me see if I can boil this down. There are really here what I would call three issues, and one of them is a discovery issue. The trustee, my client, feels he was wrongly deprived of discovery because some original documents are missing. We want to go back, if nothing else, and do some more discovery on those documents. Very limited because we think they will impact the property transfer issue that we're here about today. Now, that having been said, let me turn to the other issues. The question here is just property transfer because the magistrate, Judge Gorenstein, narrated to just that issue after we had our final round of the 12b-6 motions. The final 12b-6 motion of the defendant of a Goldman Sachs G.S. mortgage was denied, and that's how we got into discovery, and that's why we got into just the property transfer issue. As to the property transfer issue, we say that our argument number one is a total winner. It leaves no doubt. We say that there was never any express exclusion from a tool. This is a game of terms and defined terms. We're stuck with that. And your argument is there needed to be an express exclusion of the Dakota LLC interest from the desired collateral. Yes, Your Honor. And where is that in the contract? How do you reach that interpretation? Well, we start with the term desired collateral, and then the documents say that there must be an exclusion from that. And desired collateral is defined in the DLA, in the DILA, the Deed in Lua Foreclosure Agreement. One of the problems, Your Honor, here is that after that you go to two other documents to a great extent to find other important definitions. One is the loan agreement done way back in 2006. Remember that the DILA, Your Honor, was consummated in 2009. This all started as a construction project in June of 2006. So the loan agreement and the pledge agreement were originated back in 2006. But it's the DILA that has the definition of desired collateral, and that references collateral. Collateral is in the loan agreement. We go to the loan agreement, and we find all of this out. But what we say in argument number one, Your Honor, is that pledged equity interests are the key here because pledged equity interests include Karen Hendon's membership interest in this critical LLC. And that was never excluded.  Yes, Your Honor. Sotomayor? The document, though, does say that there are no transfers of collateral except as the lender elects not. It says the transfers of collateral are except as the lender elects not. But the transfers are to be effected according to Exhibit B. Now, Exhibit B has those presigned documents that just have to have the date put in. There's no evidence here they were ever used, and it seems to me that's because they didn't need to, that there was a transfer done in return for the forgiveness of the debt. What am I missing there? That's how the transfer was done, not according to any transfers effected according to Exhibit B. Well, no, Your Honor, you're exactly right. There was a forgiveness of debt here. And the forgiveness was in return for the transfer of the property. We say, yes, Your Honor, that the property was transferred. Her interest was among the property. It's not just the real property, Your Honor, the hard collateral. But the membership interests were also transferred. And that's what we get from, if we start, Your Honor, with the DILA, which is short for deed in lieu of foreclosure agreement. If we start there and wade through these other defined terms that are in these other documents, we find that there was no exclusion. And the plaintiff's interest was in the DML, right? Yes, Your Honor. In the DML. That owned GDP Holdings and that owned DDP. I'm sorry, Your Honor. There was no need for any transfer of DML's interest. It basically became worthless once DDP transferred the property. That's what we don't know, Your Honor. We've never been able to have any discovery on the debt issue. Well, we do know that it wasn't transferred in accordance with Exhibit B. We say it was transferred in accordance with Exhibit B. But those documents are never filled out. No, no, Your Honor. The documents that you're speaking of, I think, are the what we call the membership interest pledge and the power. Those are the two documents, Your Honor, that we can't find the originals of. I see. The lender has not been able to find them, even though they claim those documents are in its possession, a real irony. But that's where we are. And that happened, Your Honor, very late in the game. It happened. But that returning to the contract argument and looking at Exhibit B, Section 2 is pretty clear that the borrowers intend to presently and irrevocably transfer all desired collateral pursuant to the transfer documents. Right, Your Honor. And then Section 2.2 says the borrowers will implement such transfer by signing, acknowledging, and delivering to transferees all the documents listed in Exhibit B. And we said that. There doesn't seem to be in Exhibit B anything that has anything to do with it. Oh, yes, Your Honor, there is. All right. What is that? I'm glad you made that point because it's a very cogent one. The very first item on Exhibit B is the DILA. So the question becomes not whether the DILA is a transfer document, but what did it transfer? That's the problem. If it's there. Seems a little circular. Goldman Sachs Mortgage, Your Honor, drafted all the documents. And you'll have to ask them why they put the DILA on there and labeled it a transfer document. They've got to tell us what it transferred if it didn't transfer her interest. We say it did because of the term desired collateral, which there were never any exclusions. Now, what they try to do with this term I never can pronounce quite right, expressio, whatever, what they try to do with that doctrine is to say, well, if it's not in this pile, then it's got to be in the other pile. Well, that's not what an express exclusion is. But we say that the DILA affected a transfer. And counsel, opposing counsel, graciously conceded that that was a basis for being on Exhibit B. In the briefing, they say that if a document affected the transfer, then it belongs on Exhibit B. And we say that it affected the transfer. Here's how we get there. If you go back to July 22 of 2000, this case has been around a long time. If you go back to July 22 of 2012, the district court allowed, as pled, our third amended complaint. It allowed it. We allege, as not in the first basis, not as the first basis, or not as part of argument one, but we allege that the third amended complaint, as allowed, alleges a transfer in a little bit different way. The third amended complaint alleges the following. First of all, it starts with the sixth signature. This is an alternative way of getting to a transfer. The DILA has a sixth signature page which says in printed words below, the signature is on that page, in his or her individual and personal capacity. And Karen Hinton signed a sixth signature page. Now, if you go to DILA in specific section 3.1, which is a mess, and you combine it and you combine it. I'm sorry, I'm going to pause for a minute about section 3.1. Your time has expired. Do you want to reserve rebuttal time or use it now? I did reserve two minutes, Your Honor. Okay. So why don't we hear from your advocate? Yes, Your Honor. May it please the Court, my name is Cliff Dow. My name is Cliff Dow from Vincent & Elkins. And with me at council table is my colleague, Mary Santos Fallon. I think the panel raised some very important questions, which are covered in our papers, but I'd like to reiterate or reconfirm them. First, this case has been around for some time, going back to 2012. There were three separate motions that were dismissed in the district court, and there's only one claim left that was ruled upon on summary judgment in the district court, and that is a constructive fraudulent conveyance claim under Utah law. Simply stated, if there is no transfer of those Dakota interests, there is no fraudulent or there is no claim, and both parties agree on that. Maybe, please, you can help me understand that by explaining how did the property in fact get transferred? It got transferred pursuant to this deed in lieu of foreclosure, the DILA. And so whose interests got transferred when the property got transferred? A variety of interests, Judge Raggi, a variety of interests. As set forth, there are 17 enumerated categories of documents relating to various forms of collateral, including the deed, including the real property itself. This is a piece of property in Utah that were conveyed pursuant to the deed in lieu of foreclosure. That's the operative document, and I think we start with, and respectfully, we end with the plain terms of the agreement, just like District Judge Carter ruled in granting summary judgment and then denying the motion for reconsideration. But if I understand you right, what you're saying was not affected by the DILA, was a transfer of plaintiff's interest in DML. The membership interest, Your Honor, and the right to receive various distributions were not transferred, Your Honor, and the clearest evidence of that is it is not one of the enumerated items in Exhibit B. That's appellant's counsel refers to expressio unius. I think it does apply here, Your Honor. I think it does apply when the parties take the time to enumerate 17 specific categories and leave out, do not include the very interests that appellant claims was transferred. I think that is a fairly strong indication of what was included and what was not. In Section 2, the operative provision, the transfer, and Exhibit B, which gives effect to Section B, the interests at issue were not included. There's no place in the DILA where the interests that debtors rely upon, the membership interest and the right to receive distributions, is included. Now, your adversary argues, and argued in his brief, that the reference to the agreement itself, the DILA, affected a transfer even if it wasn't one of the express items of the 17. Respectfully, Your Honor, had you not used the word circular, I would have used the word circular, because I think it is. The DLIA does not. We've just construed it. You have to look at Section 2. The mere inclusion of the DLIA does not create additional rights, does not create an additional transfer. We still go back to the  Exhibit B. The Appellant's counsel talked about various pieces of parole evidence here. Members of the panel, our position is, under New York law, if you can construe a contract from by its plain and unambiguous terms, if you can construe the meaning of a contract within its four corners, there's no need to get to parole evidence. And any reference to that, I think, are uncalled for. With respect to missing documents, because he raised it, duplicates of these documents were produced during discovery. Federal Rule of Evidence 1003 is implicated here. Duplicates provided. There was no suggestion of malfeasance. A search was made of the documents. We don't have them. But perhaps more importantly, the documents were not filled out. They're undated. There's no transferee. They're included in our appendix. If they had been included — if they had been filled out, they would have been included in Exhibit B, the list of enumerated items of collateral being transferred. They are not. And I don't think this is a particularly complicated issue here. I think it's a matter of construing an agreement. Your position is there's nothing that demonstrates that a transfer took place? Yes, Your Honor. Yes, Judge LaValle. There's nothing before the Court. And if all the Court respectfully, the district court had to do, and this panel has to do, is read the agreement. It's quite straightforward. It's very clear Section 2 and Exhibit B provide all of the information required to make a ruling here. That's how Judge Cotter ruled on it in summary judgment. That's how Judge Cotter ruled on it in denying the motion for reconsideration. Am I right in understanding that, in essence, why there wasn't a transfer of DML in your position of her interest in DML is that it wasn't necessary to affect the transfer of the property? Yes. Yes, Judge. Yes, Judge Ruggie. That is true. And again, I don't think we have to get into testimony here because I think the contract is clear, but there was a 30b-6 deposition taken here. And I think what the Your Honor is referring to is the 30b-6 witness from Goldman Sachs did testify. We did not feel we needed the transfer of those interests to accomplish our purpose of regaining control of the real property here. And to Your Honor's point, the 30b-6 witness testified those interests were of no value. So there was no decision. Once the property was transferred, they were of no value. The property was of value, but the separate LLC interests, memberships, interests did not. And there does seem to be the collateral is not a defined term in the DILA, but it clearly is referring back to the collateral in the original agreement. And there is a sub – a sub – there is an identification of desired collateral. We're not transferring every interest that was part of the original arrangement. That is correct. And may I get my reading glasses for a second? The definition of desired collateral, as I think the Court has highlighted, means all of the collateral except such portions of the collateral as lender may elect not to have transferred. The clearest evidence of an election by the lenders is, again, I'm sorry for beating a dead horse, is Exhibit B of Section 2. So there was no election by lenders to take those interests. They are of no value. They were not required to accomplish the business purpose here. The parties clearly set forth what was being transferred and what was not. And I don't – I don't know if we have to go beyond the plain terms of the agreement here. I'd be happy to answer any other questions from the panel here. Could you briefly address the 3.1 argument? Yes. 3.1. Thank you, Your Honor. Captions are not determinative, but they are informative. The caption for Section 2 is the transfer, and Section 2 does lay out in a good degree of detail exactly how the transfer of collaterals to be accomplished and refers to Exhibit B as the items of collateral to be transferred. Section 3 is denominated acknowledgments and assurances. As Judge Carter, I think, properly found, the purpose of that paragraph, which does not contain any transfer of these interests, was to make sure that the transfer set forth in Paragraph 2 could not be challenged later. They were an enforcement mechanism, if I may say. But there's no separate transfer. There's no independent or additional transfer set forth in Section 3. If there are no other questions, I'll rest on our briefs. Thank you very much. Your Honors, I think it is important here to keep in mind that we have three different or at least two different solid ways to get where we want to get. The first is Argument 1. It requires an explicit exclusion, and there was never an explicit exclusion. And we're here, remember, because genuine issues of material fact matter, and this is at least a genuine issue of material fact. What I submit to you is that there was never an exclusion, and nothing counsel has said shows that there was an explicit exclusion. The — another very important point, I think, Your Honor, is Judge Carter's reference to the phrase in Section 3.1, the last sentence, he, in essence, says that the phrase, hereby, sell, transfer, and convey, doesn't do that, that it's something else. And I'm sorry I don't have my notes in front of me what that something else is. But I can't imagine that the words, hereby, sell, transfer, and convey, don't at least impart a suggestion of conveyance. I think it does a lot more. And that's important to our argument, too, because if you remember, Your Honors, under the — we say as another alternative to getting to a transfer that — and this is what our Third Amendment complaint was all about, which was allowed by Judge Carter as pled. And by the way, the pertinent portions of the Third Amendment complaint are set forth in our documents. I think — I can't remember the — it's like 22, page 22 to 24, but there are five or six pages — excuse me, five or six paragraphs that we allege in the Third Amendment complaint affected the transfer. And one final point, and then I'm done. By their associate counsel's own statement, somebody's statement, they said that it could be on Exhibit B if it affected the transfer, not if it was some kind of specific document that they described. The DILA did affect the transfer. It did so under the Third Amendment complaint, if nothing else. And that's all in our brief. Thank you, Your Honors. Kagan. Thank you both. We'll take the matter under advisement.